Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 1551 | DATE | 5/24/2002 |
| CASE TITLE | Proshred Holdings Limited, et al. vs. Conestoga Document and Product Destruction, Inc., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiffs' motion for a preliminary injunction [4-1] is granted. This Court hereby enters a declaratory judgment in favor of the Plaintiffs and against the defendants. This case is hereby dismissed.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | MAY 28 2002 date docketed |
| ✓ | Docketing to mail notices. | |
| ✓ | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| RO | courtroom deputy's initials | 02 MAY 24 PM 3:22 date mailed notice |
| | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 16

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PROSHRED HOLDINGS LIMITED )
and SEAN O'DEA, )
 )
 )
Plaintiffs, )
 ) No. 02 C 1551
v. )
 ) Judge Ruben Castillo
CONESTOGA DOCUMENT AND )
PRODUCT DESTRUCTION, INC., )
GREGORY V. CRANSTON and JAN F. )
CRANSTON, )
 )
Defendants. )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Proshred Holdings Limited ("Proshred Holdings") and Sean O'Dea filed a declaratory judgment complaint seeking a preliminary injunction to enjoin Defendants Conestoga Document and Product Destruction, Inc. ("Conestoga"), Gregory V. Cranston and Jan F. Cranston (collectively "the Cranstons") from pursuing an arbitration proceeding against Plaintiffs. Plaintiffs argue that they are not bound by the arbitration clause contained in the License Agreement ("the Agreement") entered into by the Cranstons and Proshred Inc. ("Proshred"), a wholly-owned subsidiary of Proshred Holdings. After careful scrutiny of the Agreement in light of the relevant Seventh Circuit caselaw, we conclude that Plaintiffs are entitled to a preliminary injunction, (R. 4-1), as well as a declaratory judgment in their favor.

## RELEVANT FACTS

On August 11, 1994, the Cranstons entered into a written Agreement with Proshred which granted the Cranstons a license to operate a mobile document shredding franchise in

southeastern Pennsylvania using Proshred's trademarks, service marks and related intellectual property rights and Proshred's business format and operating system. (R. 1-1, Compl. ¶ 9.) On November 1, 1994, the Cranstons assigned their right, title and interest in the License Agreement to their operating company, Conestoga. (*Id.* at ¶ 10.)

Brothers Frank and Sean O'Dea are high ranking officers of Proshred Holdings and Proshred. (R. 9, Defs.' Opp. at 2.) Proshred Holdings is a Canadian company that operates and licenses other companies to operate document shredding businesses. (*Id.*) Proshred Holdings is the parent company of Proshred, a Delaware company that was established to license document shredding businesses in the United States. (*Id.*)

Defendants assert that Plaintiffs used various tactics to establish a tie between Proshred and Proshred Holdings, which lured Defendants into entering the Agreement with Proshred. (*Id.*) These alleged tactics include but are not limited to providing the Cranstons with Proshred's Uniform Franchise Offering Circular ("UFOC") which contains an attachment of Proshred Holdings' audited financial statement, (*id.* at 4), providing the Cranstons with Proshred Holdings' Operations Manual, (*id.* at 3), and listing Proshred and Proshred Holdings' franchisees as contacts, (*id.*). Defendants also speculate as to the corporate formalities of both corporations by asserting that neither Proshred nor Proshred Holdings has an active Board of Directors, thereby leaving operational decisions to the O'Deas. (*Id.* at 2.)

The Agreement entered into by the Cranstons and Proshred contains an arbitration clause. The clause provides, in relevant part, that with the exception of "[a]ny claim or dispute involving or contesting the validity of any of the Trademarks":

any controversy or claim arising out of or relating to this Agreement, or any breach

2

> of it, including, without limitation, any claim that this Agreement, or any part of it, is invalid, illegal, or otherwise voidable, or void, shall be submitted to final and binding arbitration before, and in accordance with, the Commercial Rules of the American Arbitration Association, and judgment upon any award may be entered in any court having jurisdiction of it.

(R. 1-1, Compl., Ex. A, Agreement at 33.) Neither Proshred Holdings nor O'Dea were signatories to the Agreement. The Agreement, however, also contains a Recital which names Proshred Holdings as the guarantor of the Agreement:

> Proshred Holdings Limited has unconditionally guaranteed, approved and acknowledged, as the case may be, all of the rights, duties, action [sic] and obligations of Licensor as contained in this Agreement, including but not limited to, Licensor's unconditional right to grant licenses to the tradename and trademark "Proshred" and other trademarks, service marks, logos, copyrights, designs, color schemes and tradenames used in connection with the operation of the Business System.

(*Id.* at 2.) Apparently, the Business System did not work. Proshred no longer conducts any business in the U.S., and it released all of its franchisees, except for the Cranstons, from their license agreements. (R. 9, Defs.' Opp. at 4.)

On July 31, 1997, Defendants filed a demand for arbitration against O'Dea and Proshred with the Philadelphia, Pennsylvania office of the American Arbitration Association ("AAA"). (R. 1-1, Compl. ¶ 14.) On June 26, 1998, Defendants filed an amended demand for arbitration which listed Proshred Holdings as an additional respondent. (*Id.* at ¶ 15.) On July 16, 1998, counsel for Proshred Holdings sent a letter to the AAA and to Defendants stating that they denied the claim set forth in the demand and denied that they were subject to the arbitration provisions of the Agreement. (*Id.* at ¶ 16.) This denial was repeated on February 19, 2002, during a

conference call with the Arbitrator. (R. 4-1. Pl's Mot. for Prelim. Inj., Ex. A., Norman Leon Decl. ¶ 4.) The Arbitrator stated that she would resolve this issue at the arbitration hearing. Currently before the Court is Plaintiffs' motion for a preliminary injunction to enjoin Defendants from pursuing an arbitration proceeding against Plaintiffs. For the reasons contained herein, Plaintiffs' motion is granted.

## ANALYSIS

### I. Legal Standards for a Preliminary Injunction

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). To succeed on its motion, Plaintiffs must show that: (1) their claim has some likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) they will suffer irreparable harm if the preliminary injunction is denied. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). Should Plaintiffs make this threshold showing, the Court must then: (4) balance the harm to Plaintiffs if the injunction is wrongfully denied against the harm to Defendants if it is wrongfully granted, and (5) weigh the public's interest in the matter. *Cooper v. Salazar*, 196 F.3d 809, 813 (7th. Cir. 1999).

### II. Plaintiffs Have Met the Legal Standards for a Preliminary Injunction

#### A. Success on the Merits

First, Plaintiffs have evidenced that there is a substantial likelihood that they will prevail on their claim, since neither Plaintiffs, Defendants, nor the Court has been able to establish a basis for holding Proshred Holdings or O'Dea bound to the arbitration agreement. Although the

4

language of the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, has been construed as creating a statutory presumption in favor of arbitration, *Marchetto v. DeKalb Genetics Corp.*, 711 F. Supp. 936, 938 (N.D. Ill. 1989), there must first be a "contractual basis to draw all parties involved in the dispute into arbitration." *Laborer's Int'l Union of N. Am. Local Union No. 309 v. W.W. Bennett Constr. Co.*, 686 F.2d 1267, 1274 (7th Cir. 1982). The Supreme Court has made clear that "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)).

Plaintiffs have persuaded the Court that Proshred Holdings should not be held accountable to the arbitration agreement. The Seventh Circuit stated, in *Grundstad v. Ritt*, 106 F.3d 201 (7th Cir. 1997), that "'as a general rule, a guarantor who is not a signatory to a contract containing an arbitration clause is not bound by the arbitration clause.'" *Grundstad*, 106 F.3d at 204 (quoting *Asplundh Tree Exp. Co. v. Bates*, 71 F.3d 592, 595 (6th Cir. 1995)). The Court of Appeals continued by articulating that guarantors "for the performance of a contract are bound by the arbitration clause in that contract *only when they expressly agree to the obligation to arbitrate*." *Id.* at 204 (internal citation omitted) (emphasis in original). Intent to arbitrate must be unambiguous. *Id.* at 204-05. Specifically, in *Grundstad* an agreement containing an arbitration clause was entered into between Ritt, the defendant, and a corporation partly owned by Grundstad, the plaintiff. *Id.* at 202. Immediately following the signature lines of the agreement, Grundstad agreed to guarantee "all of the provisions of the within Agreement, and

5

especially the performance of [the corporation] hereunder." *Id.* at 203. The Court of Appeals noted that the guaranty was referenced in the Agreement as follows:

> [The corporation] agrees to obtain the signatures of two of the beneficiaries under a certain trust that holds the shares in [the corporation], Messers. H. Joel Rahn and Oddmund Grundstad to this Agreement guaranteeing all of the terms, covenants, and provisions as well as the performance of [the corporation] hereunder.

*Id.* When the corporation defaulted as to its obligations under the agreement, Ritt filed and obtained an arbitration award against the corporation. *Id.* Thereafter, Ritt initiated an arbitration proceeding against Grundstad upon learning that the corporation was refusing to honor the arbitration award. *Id.* Grundstad filed a claim to enjoin arbitration, arguing that as a guarantor to the agreement he was not obliged to arbitrate. *Id.* The Seventh Circuit evaluated the language in the agreement and in the guaranty and found Grundstad's unambiguous intent to be bound by the arbitration clause lacking. The Court noted that "[n]owhere within the document does the guaranty even refer to any undertaking by the guarantors to be bound personally to arbitrate disputes arising from the guaranty." *Id.* at 205.

Similarly, in the instant case, the language in the Recital of the Agreement between the Cranstons and Proshred does not refer to any undertaking by Plaintiffs to be personally bound by the arbitration clause in the Agreement. Just as Grundstad agreed to guarantee "all of the provisions of the within Agreement, and especially the performance of [the corporation] hereunder," *id.* at 204, Proshred Holdings "unconditionally agreed, approved and acknowledged, as the case may be, all of the rights, duties, action [sic] and obligations of Licensor as contained

in this Agreement." (R. 1-1, Compl. Ex. A, Agreement at 5.) This Court cannot agree with Defendants that the more descriptive language in the latter agreement should be construed as more expansive than the former so as to find unambiguous intent to arbitrate on the part of Plaintiffs. Defendants' argument that the *Grundstad* Court relied on the notion that the agreement and the guaranty clause were separate documents has no bearing on the case at bar. Even if we were to find Proshred Holdings' guaranty to be a part of the Agreement, the instant case would still be distinguishable. The *Grundstad* Court was interested in determining whether there were one or two documents because Grundstad was a signatory to the agreement. Here, neither Proshred Holdings nor O'Dea is a signatory to the Agreement. More importantly, the *Grundstad* Court stressed that in order for a guarantor to be bound by the arbitration clause, there must be evidence that the guarantor unambiguously intended to be bound to arbitration. *Id.* at 205. That intent is clearly lacking in the case before us.

Defendants' remaining attempts to bind Plaintiffs to the arbitration clause are also unavailing. First, Defendants state that Plaintiffs may be bound under common law contract and agency principles. Defendants cite five different principles (incorporation by reference, assumption, agency, veil-piercing and estoppel) without explaining under which principle Proshred Holdings should be bound. (R. 9, Defs.' Opp. at 6.) Nevertheless, the Court has evaluated these claims and finds them without merit. In particular, we find that Defendants' assertion that "if claims against two affiliated companies are based on the same facts and are inherently inseparable, the claims against both may be referred to arbitration even though only one of the companies is a party to the arbitration agreement," (*id.*), is an attempt to invoke the

7

equitable estoppel exception. As noted by Plaintiffs, (R. 13, Pls.' Reply at 7), all of the cases cited by Defendants in support of this exception involve non-signatories attempting to bind signatories to the arbitration agreement, not vice-versa as in the case at bar. *See Hughes Masonry Co. v. Greater Clark County Sch. Bldg. Corp.*, 659 F.2d 836, 838-39 (7th Cir. 1981); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 756-57 (11th Cir. 1993); *J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 320-21 (4th Cir. 1988). Furthermore, after conducting our own independent research, we have not unearthed any caselaw supporting the proposition that signatories may bind non-signatories under the equitable estoppel exception. *See Thomson-CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995) (holding that there is an important distinction between a non-signatory holding a signatory to an arbitration agreement and a signatory attempting to hold a non-signatory to an arbitration agreement, because arbitration is strictly an issue of contract, and courts have no authority to mandate arbitration on those who have not agreed to do so.)[1]

In addition, there is no basis to find O'Dea personally liable to the arbitration agreement. As Plaintiffs' note, the caselaw cited by Defendants supports the inapposite proposition that under the theory of agency, "an agent may invoke an arbitration agreement entered into by its principal." *Messing v. Rosenkrantz*, 872 F. Supp. 539, 540 (N.D. Ill. 1995). *Accord Hoffman v.*

---

[1] Defendants reliance on *Frynetics Ltd. v. Quantum Group, Inc.*, No. 99 C 4704, 2001 WL 40900 (N.D. Ill. Jan. 11, 2001), is also misplaced. *Frynetics* is clearly distinguishable from the case at bar. In *Frynetics*, one of the non-signatories was held to the arbitration agreement because it was deemed to have purposely merged a signatory company out of existence in order for the signatory company to avoid arbitration. *Id.* at *3. Moreover, the other non-signatory was bound because it became a sublicensee of a signatory to the agreement. *Id.* at *4. Neither of these circumstances has been alleged in the case before us. Furthermore, Defendants have not produced any caselaw evidencing that Proshred's decision to attach Proshred Holdings' financial statements to its UFOC is sufficient to bind Proshred Holdings to the arbitration agreement.

*Deloitte, LLP*, 143 F. Supp. 2d 995, 1004 (N.D. Ill. 2001); *Steinberg v. Ill. Co.*, 635 F. Supp. 615, 617 (N.D. Ill. 1986). The Court, after exhaustive research, has been unable to locate any controlling authority supporting the position that the inverse is true, *i.e.,* that a signatory may bind a non-signatory agent to an arbitration agreement entered into by its principal. Moreover, Defendants' attempt to hold O'Dea accountable under a theory of veil-piercing is without merit. In general, there is a high burden on a party seeking to pierce the corporate veil. *Trans Union LLC v. Credit Research Inc.*, No. 00 C 3885, 2001 WL 648953, at *8 (N.D. Ill. June 4, 2001). Defendants claim that Proshred Holdings and Proshred have no active Board of Directors. Thus, Defendants maintain that all of the operational decisions were made by O'Dea. In order to pierce the corporate veil under Illinois law, however, we must consider numerous factors including:

> (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of fund; (9) diversion of assets from the corporation by or to a shareholder; (10) failure to maintain arm's length relationships among related entities; and (11) whether the corporation is a mere facade for the operation of the dominant shareholders.

*Jacobson v. Buffalo Rock Shooter Supply, Inc.*, 664 N.E.2d 328, 331 (Ill. App. Ct. 1996) (citing *In re Estate of Wallen*, 633 N.E.2d 1350, 1357-58 (Ill. App. Ct. 1994)). No factor is determinative on the issue of whether to disregard a corporate entity. *Wallen*, 633 N.E.2d at 1357. Here, we cannot find that the mere failure to have an active Board of Directors is a significant enough "failure to observe corporate formalities" for the Court to completely ignore the corporate entity. We have seen no evidence of inadequate capitalization, nonpayment of dividends, insolvency, failure to keep corporate records, diversion of asserts from the corporation

by or to a shareholder or any of the other factors which would allow us to pierce the corporate veil. Thus, O'Dea cannot be held personally bound to the arbitration clause.

Defendants' final attempt to hold Plaintiffs to the arbitration agreement under an estoppel theory also fails. Defendants argue that since Plaintiffs' counsel has "participated in administrative, preliminary and status conferences with the AAA and the arbitrator" and since Plaintiffs have waited to bring this action for several years, they should be estopped from now claiming that they are not bound by the arbitration provision. (R. 9, Defs.' Opp. at 13.) The cases cited by Defendants, however, involve situations in which the parties waited for adverse arbitration rulings before objecting to their agreement to be bound by the arbitration. *See Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 591 (7th Cir. 2001), *cert. denied*, 122 S. Ct. 69 (2001); *Gvozdenovic v. United Air Lines, Inc.*, 933 F.2d 1100, 1103 (2d Cir. 1991). In this case, on the other hand, Plaintiffs have not only evinced their objection to arbitration through this lawsuit, but also through a letter to the AAA, (R. 1-1, Compl. Ex. D, Letter to the AAA), and a phone call to the AAA, (R. 4-1, Pls.' Mot. for Prelim. Inj., Ex. A, Norman Leon Decl. ¶ 4.) For all of the above reasons, we find that Plaintiffs have more than established by a substantial likelihood their probability of success on the merits. In fact, for the foregoing reasons, this Court holds that Plaintiffs are entitled to a declaratory judgment that no valid arbitration agreement exists between themselves and Defendants. Consequently, we conclude that Plaintiffs have met the first prong of the legal standards for a preliminary injunction.

## B. Inadequate Remedies at Law

Second, we find that Plaintiffs have established the inadequacy of any remedies at law if they are forced to arbitrate in this case. As the Supreme Court noted, the issue of who initially decides the arbitrability question – the arbitrator or the courts – has a significant impact on the outcome of the case. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995). The Supreme Court stated that a party could still submit the arbitrator's decision to a federal court for review, but the court will only set aside an arbitrator's decision in "very unusual circumstances." *Id. See also Chi. Sch. Reform Bd. of Trs. v. Diversified Pharm. Servs., Inc.*, 40 F. Supp. 2d 987, 996 (N.D. Ill. 1999) (stating that judicial review of an arbitration decision is an empty promise). Thus, this Court is convinced, and Defendants have not argued otherwise, that Plaintiffs would not have an adequate remedy at law if they were forced to arbitrate the arbitrability question.

## C. Irreparable Harm

Third, we find that Plaintiffs were persuasive in establishing irreparable harm if forced to arbitrate. "[F]orcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes *per se* irreparable harm." *Chi. Sch. Reform*, 40 F. Supp. 2d at 996. *See also PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 514 (3d Cir. 1990) (stating it is "*per se* irreparable harm if a court were to abdicate its responsibility to determine the scope of an arbitrator's jurisdiction and, instead, were to compel the party, who has not agreed to do so, to submit to an arbitrator's own determination of his authority"). Sending cases to arbitration without express agreement

undeniably robs the party of its "right to select the forum in which it wishes to resolve disputes." *Chicago Sch. Reform*, 40 F. Supp. 2d at 996.

Defendants do not dispute this claim. Rather, Defendants urge the Court to focus on Plaintiffs' delay in seeking relief. (R. 9, Defs.' Opp. at 14) (citing *Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1019 (7th Cir. 1980)). Defendants concentrate on the fact that Plaintiffs knew about the arbitration proceedings since July 1998, but waited until March 1, 2002 to bring their claim before this Court. (*Id.* at 14.) The *Ideal Industries* Court, however, noted that delay alone will not vitiate established irreparable injury. *Ideal Indus.*, 612 F.2d at 1025. A court must also consider whether the delay lulled the defendant into a false sense of security and whether the defendant acted in reliance of the delay. *Id.* Defendants here have made no such claims. As such, we find that Plaintiffs have established irreparable injury.

### D. Balancing of Harms

Fourth, this Court finds that the injury to Plaintiffs greatly outweighs the threatened harm to Defendants. Defendants allege that they will be harmed if, after they have already completed their pre-hearing preparation, they are forced to commence a second proceeding against Plaintiffs in a Canadian court. (R. 9, Defs.' Opp. at 15.) We find, however, that the balance of harms favors Plaintiffs. Plaintiffs should not be held accountable for Defendants' unwise decision to name parties not subject to the arbitration agreement. *See Chi. Sch. Reform*, 40 F. Supp. 2d at 996 (holding that the balance of harms favored entering the injunction since the entry served to

enforce contractual rights between the parties). Further, as noted by all of the parties, the entry of a preliminary injunction does not establish that Plaintiffs are not liable to the Defendants. Rather, that decision is left intact to be determined by the proper arbitrator or court.

### E. The Public Interest

Finally, we find that the public interest also favors the entry of a preliminary injunction. Plaintiffs have argued, and Defendants have not contested, that "compelling parties to arbitrate claims which they did not agree to arbitrate would not only be wasteful" as to time and money "but also would upend contract law and the public's expectation that contract terms will be enforced as agreed." (R. 4-1, Pls.' Mot. for Prelim. Inj. at 12) (citing *Chi. Sch. Reform*, 40 F. Supp. 2d at 991). Therefore, we are satisfied that the public interest also favors Plaintiffs.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction is granted. (R. 4-1.) Plaintiffs Proshred Holdings and O'Dea have made a clear showing of the need for the extraordinary remedy of the preliminary injunction that they have requested.

Pursuant to Federal Rule of Civil Procedure 65, Defendants are hereby enjoined from prosecuting any claims against, proceeding as to, or otherwise maintaining or continuing the arbitration proceeding entitled *Gregory V. Cranston, Jan F. Cranston and Conestoga Document and Product Destruction, Inc. v. Proshred Inc., Sean O'Dea and Proshred Holdings Limited,*

Case No. 50 T 133 00110 97 (American Arbitration Association) as to Proshred Holdings and Sean O'Dea.

Additionally, for the reasons contained in Part A of our analysis, *see supra* pp. 4-10, this Court hereby grants a declaratory judgment in favor of Plaintiffs and hereby declares: (1) that no valid arbitration agreement exists between Plaintiffs and Defendants; and (2) that Plaintiffs have no obligation to participate in the pending arbitration proceeding referenced herein, and will not be bound by any determinations, findings, conclusions or awards made in or rendered as a result of said proceeding.

The Clerk of the Court is directed to enter judgment, pursuant to Federal Rule of Civil Procedure 58, in favor of Plaintiffs.

ENTERED:

**Judge Ruben Castillo**
**United States District Court**

**Dated: May 24, 2002**